### Stinson *versus* Gardiner.

The demurring to a bad plea does not have the effect of admitting as true, the facts therein alleged, to be used in the trial of other issues.

An instrument was made under seal between the owner of a mill-dam and the owner of land flowed thereby, stipulating, on the part of the owner of the dam, that he would reduce its height to a specified point, and forever keep it reduced to that point; and *granting*, on the part of the land owner, a right to flow his land by the dam, while it continued reduced to the stipulated point; reserving however the right to annul the grant, whenever the dam should be raised above that point; —

*Held*, 1st, That the covenant of the owner of the dam to keep its height reduced, was an *independent* covenant; —

2d, That the contingent reservation by the land owner to annul his grant, gave no election to the owner of the dam to raise it, after having once reduced it to the stipulated point.

3d, Such a reservation furnishes no protection to the dam owner, in a suit upon his covenant to keep the dam reduced.

4th, In such a suit, whatever previously acquired right of maintaining the dam to its original height, may have been vested in the owner, by prescription, or grant lost through time and accident, he is precluded, *by his covenant*, from setting up such previous right as a defence.

ON report from *Nisi Prius* term, SHEPLEY, C. J. presiding. COVENANT BROKEN.

The defendant was maintaining a dam across the Cobbissee river, by which the water was flowed back upon the lands of several riparian proprietors, of whom the plaintiff was one. Between those proprietors and the defendant, an instrument of agreement was entered into, under their respective seals, of the import described in the opinion of the court.

Under the stipulation by the defendant he reduced his dam to the agreed point. Of the back-flow afterwards resulting from the dam in its reduced condition, the plaintiff made no complaint. But the defendant afterwards raised the dam to its original height, thereby creating damage to the land of the plaintiff. To recover for that damage, this suit is brought upon that covenant, by which the defendant had bound himself to keep the dam at the reduced height.

The defendant put in four pleas.

Two of them were traversed and the issues were found for the plaintiff, with damages assessed at $100.

The third plea alleged, *in the defendant* a right to flow, acquired by twenty years uninterrupted user, prior to the making of the covenant.

The fourth alleged a grant, now lost, made about the year 1773, to the defendant's ancestor by the Proprietors of the Kennebec Purchase, who then owned all the lands now flowed by the dam.

To these last two pleas, general demurrers were filed. The defendant requested instruction to the jury, *that* the covenants of the parties to the sealed instrument were *dependent* covenants ; *that* the reservation, made by the plaintiff, authorized the defendant to restore his dam to its original height ; and *that* the only penalty for his so doing was to authorize the plaintiff to annul his grant, and resort to the remedy for flowing,

given by the statute; and *that*, therefore, this action is not maintainable. These instructions were not given. If they ought to have been given, a new trial is to be granted.

*F. Allen*, for the defendant.

Under an erroneous construction of the law, though declared by the appropriate tribunal, (see *Tinkham* v. *Arnold*, 3 Greenl. 120,) the defendant stipulated to reduce his dam from a height to which it had been maintained for 60 years. And the plaintiff, in consideration of that stipulation, and assuming that he had a right to prohibit the flowing, granted to the defendant a right to flow by the reduced dam, reserving the privilege of annulling the grant, whenever the dam should be raised.

The defendant has pleaded that, prior to the covenant, he had uninterruptedly occupied the dam to its original height, and thereby flowed the water for twenty years; and also that, about the year 1773, the Proprietors of the Kennebec Purchase, then owning all the land alleged to be flowed, granted to the defendant's ancestor, &c. the right to flow to the height of the dam in its unreduced condition.

By demurring, the plaintiff admits the facts stated in the pleas, if properly pleaded. They were properly pleaded, because they apply directly to the only valuable consideration alleged in the instrument to have been given for the defendant's covenant. They assert, *in the defence*, the very right which the plaintiff assumed to grant, and negative all such right in the plaintiff.

If the consideration, expressed in the instrument, had been *ostensibly* of no value, the raising of the dam could give to the plaintiff no cause of action. Suppose the alleged consideration for the covenant now sued had been that the plaintiff would grant to defendant a right to take a journey, it could support no action. In that case, the want of consideration would appear on the instrument itself; in this case we point it out by a plea, which is of equal efficacy.

Should it be said there was, in raising the dam, a technical breach of the defendant's covenant, we reply, there was virtu

ally a breach of the *plaintiff's* covenant, in assuming to grant to the defendant that which the defendant already possessed.

The grant from the Kennebec Proprietors, admitted by the demurrers, is to have the same effect as if made by the plaintiff himself. Suppose, prior to the indenture, the plaintiff had made such a grant, how illusory would have been the reiteration of it, contained in the indenture.

Even if there *was* a technical breach of the defendant's covenant, yet on the facts presented and admitted by these pleadings, the damage could be but nominal. If it be said, the jury, under the other issues, have found real damage, the answer is that, under those issues, the jury had not the evidence furnished by these pleadings.

Suppose the plaintiff, instead of demurring, had taken issue on any of the material facts, alleged in the pleas, and the issue had been found for the plaintiff, the jury could have assessed but nominal damage, if any. Surely the plaintiff's *admission* of the facts should avail to the defendant quite as much as the *finding of them* by the jury. Where one sued upon the covenants in a deed, and the only incumbrance was a mortgage to himself, he could recover but nominal damage. *Bean* v. *Mayo*, 5 Greenl. 94. So in slander, for loss of character, the defendant may prove the plaintiff had no character to lose. It is to be remembered that this is not an action on a bond with penalty, but is one merely sounding in damages. The plaintiff cannot urge that the pleas, if traversed, would have formed immaterial issues, for the facts stated in them, if found true, would have precisely met and annihilated the plaintiff's claim.

*Ruggles*, for the plaintiff.

Howard, J. — The defendant was owner of a dam on the Cobbissee river, which caused the water to flow back upon the lands of the riparian proprietors. On June 11, 1829, the parties executed an instrument under seals, which they style an indenture, by which the defendant on the one part, "in

consideration of the individual covenants and agreements here-inafter mentioned to be performed," by Bradstreet and others, riparian proprietors, subscribers individually, on the other part, covenanted and agreed with them individually, that he would, by the first day of October, then next, reduce the perpendicular height of his dam, eighteen inches between the wings; and further covenanted for himself, his heirs, executors and administrators to keep the dam so reduced forever. " And the said Bradstreet and others, subscribers hereto, on their part, for the consideration, and for the further consideration of one dollar paid us by said Gardiner, do hereby give, grant, sell and convey to said Gardiner, his heirs and assigns forever, the right and privilege of flowing so much of our lands as will remain flowed by reason of said dam, after the same shall be reduced to the amount before named, and so long as said dam shall continue to be raised no higher than it will be after said reduction. To have and to hold . the said granted privilege to him the said Gardiner, his heirs and assigns forever. The said Bradstreet and others, subscribers hereto, reserving to themselves the right of annulling this grant whenever the said Gardiner shall cease to keep his said dam reduced to the extent before mentioned, and the said Gardiner agreeing thereto."

This instrument appears to have been duly executed by the parties, respectively, the plaintiff being one of the riparian proprietors, and a subscriber, with his seal affixed.

Damages are claimed in this suit for an alleged breach of the defendant's covenants recited. It appeared that he reduced his dam according to his agreement, and afterward raised it to the original height, and thereby again flowing and injuring the lands adjacent to the waters of the river. For such injury to the plaintiff's land, in 1847, this action is brought.

Issues were joined on the first and second pleas, and found for the plaintiff. To the third and fourth pleas, the plaintiff demurred generally, and the first question relates to their sufficiency. In the third, the defendant sets out a prescriptive right to flow as alleged, acquired and enjoyed before entering into his covenants; and in the fourth he pleads a similar right un-

Stinson *v.* Gardiner.

der an alleged grant from the Proprietors of the Kennebec Purchase to his ancestor, which has been lost by time and accident.

The substantial issues were, whether the defendant made and kept the covenants declared on. His right to flow independent of those covenants was not involved, but rather his rights under his covenants, and the grant from the plaintiff. It is no answer to the declaration, for the defendant to allege rights that he once possessed, and might still enjoy but for his own acts and covenants. He had power to part with his supposed privileges on his own terms. There appears to have been a compromise of asserted rights or claims, by the parties, when they executed the " indenture." Then new relations, rights and obligations were created, which are now the subject of controversy. Prior rights waived, surrendered, abandoned or lost, are no longer material to the issues involving present interests and obligations. The third and fourth pleas must be adjudged bad, for immateriality.

It is insisted that the covenants of the defendant are dependent. Whether they can be so regarded must depend upon a construction of the terms of the instrument, and with reference to the nature of the transaction, and the intention of the parties. Upon a fair interpretation of the " indenture," it will be perceived that the defendant agreed to perform, and that the plaintiff performed. The former covenanted, and the latter granted. And when the defendant reduced his dam, the grant took effect, and the performance of his covenants was, in no respect, to depend upon any subsequent act or agreement of the plaintiff. These covenants were unqualified, and unconditional, and must be regarded as independent.

The defendant contends that the true construction of the contract of the parties was, that if the defendant did not keep his covenants, the sole remedy for the proprietors was to annul their grant, and resort to a complaint, under the statute, for flowing. It is true that they reserved, by consent of the defendant, the right to annul their grant whenever he should cease to keep his dam reduced according to agreement; but they did

not stipulate to release his covenants, or abandon their claim for damages for a breach, in any event. Nor can we understand that it was optional with the defendant whether to sustain or rescind the entire contract. The construction contended for, would be inconsistent with the letter and spirit of the instrument, and the obligations of the parties.

The position that the defendant had a right to flow, before executing the contract, is assumed to be in accordance with the fact, because it is admitted by the demurrers. If true, it was irrelevant, as before suggested; yet it cannot be conceded that by demurring to a bad plea, the plaintiff admitted the facts therein stated, as independent facts to be used in the trial of other issues, in this, or any other action. The effect of the demurrers was to admit the facts stated in the pleas for the purpose of testing their sufficiency in law;—but the pleas having been adjudged bad, the admissions do not estop the plaintiff, or affect the determination of his case. Nor do they confirm the defendant's alleged right to flow, acquired before the grant; a right which he is estopped to claim by his acts and covenants. In legal strictness, facts not well pleaded are never admitted by a demurrer.

In the opinion of the Court the verdict cannot be disturbed on the alleged ground of excessive damages.

*Judgment on the verdict.*